NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0316n.06

Case No. 26-1032

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

```
FILED
Jul 17, 2026
KELLY L. STEPHENS, Clerk
```

ROBERT LEROY HOUGHTALING,

 Plaintiff - Appellant,

v.

JUSTIN SIWANOWICZ, Correctional
Officer, in her individual capacity,

 Defendant - Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

OPINION

Before: SILER, DAVIS, and RITZ, Circuit Judges.

**RITZ, Circuit Judge.** Robert Houghtaling was an inmate in a Michigan correctional facility. After providing information to prison staff about drug smuggling in the facility, Houghtaling began receiving death threats. So, prison staff held Houghtaling in protective custody until he could be transferred to a facility that could meet his security needs. But on the morning of his transfer, a prison guard, Justin Siwanowicz, left Houghtaling's door unlocked as other prisoners walked by. Despite Houghtaling's pleas to lock his door because of his protective custody status and the presence of other inmates, Siwanowicz refused and walked away. Moments later, Dangelo Weaver, who was standing outside of his cell and housed across from Houghtaling at the time, rushed to Houghtaling's cell and stabbed him over twenty times.

Houghtaling filed a complaint against Siwanowicz, alleging a violation of the Eighth Amendment and gross negligence under Michigan state law. Siwanowicz moved for summary

judgment on the Eighth Amendment claim, and the district court granted her motion and declined to exercise supplemental jurisdiction over Houghtaling's state claim. We reverse.

**BACKGROUND**

I.      **Threats against Houghtaling**

Houghtaling was incarcerated at Earnest C. Brooks Correctional Facility in Muskegon, Michigan. After providing information to prison staff about drug smuggling in the prison, Houghtaling reported to prison staff on May 11, 2021, that he began to receive death threats, and he asked for protection.

State policy says that if prison staff believe that a prisoner could be in danger in the general population, the prisoner is temporarily segregated or placed in "other suitable housing" if the institution does not have temporary segregation. RE 50-3, Mich. Dep't of Corr. Prisoner Placement and Transfer Policy Directive, PageID 422. Also, an investigation is conducted into the potential threat. The investigation findings are then forwarded to the Security Classification Committee (SCC) for review. If the SCC determines that the prisoner's protection needs cannot be met in his housing unit, he is transferred to a different general population unit "as soon as possible," or, if the institution cannot "meet the prisoner's protection needs," to another facility. *Id.* A prisoner is transferred to protective housing only if a general population unit in his facility or another institution cannot meet his protection needs.

Here, the facility's inspector investigated Houghtaling's claims and found that although "[t]he threat against [Houghtaling's] life can not [sic] be confirmed," most of the information Houghtaling offered "to explain his needs for protection . . . was proven to be valid" and "a threat against his life could be a real possibility." RE 50-2, Investigation Rep., PageID 417. Houghtaling was relocated to the Eastlake Confinement Pending Hearing (CPH) Unit, a unit within Brooks.

Houghtaling met with the Brooks inspector again on July 16, 2021, to reiterate his need for protection from unnamed inmates. The SCC determined "Houghtaling's protection[] needs cannot be met at [Brooks]" and decided to keep Houghtaling in the CPH Unit until he could be transferred to another facility. *Id.*

The CPH Unit houses inmates in protective custody and "[l]evel four" general population inmates who are held for disciplinary sanctions "for an extended amount of time." RE 52-4, Siwanowicz Dep., PageID 609, 613. "Level four" designates prisoners who are the second-highest level of danger, with "level five" identifying prisoners who are the "most at risk," "most dangerous," and "most violent." *Id.* at PageID 609. In the CPH Unit wing where Houghtaling was held, inmates in protective custody are housed on one side of the hallway and inmates held for disciplinary sanctions are housed directly across from them.

## II.     Protective custody in the CPH Unit

During the three months Houghtaling was housed in the CPH Unit, he frequently encountered Siwanowicz, who had regularly worked in the unit for the preceding eight years. When Houghtaling was placed in protective custody, Siwanowicz learned that threats had been made against Houghtaling, and Houghtaling testified that he told Siwanowicz that he had been stabbed by another inmate before on at least one occasion.

In some of these interactions, Siwanowicz expressed animosity toward Houghtaling. One inmate housed "a couple doors down" from Houghtaling, James Adkins, reported that he frequently heard the two "arguing and yelling at each other," and "on more than one occasion" heard Siwanowicz tell Houghtaling that "she wished he . . . wasn't on Protective Custody status so he would get 'fucked up.'" RE 52-8, Adkins Aff., PageID 632. Another inmate in the unit "heard Siwanowicz tell Houghtaling that she was going to get him 'fucked up' before he leaves

the unit for trying to[]ruin her coworkers['] careers." RE 52-9, Plants Aff., PageID 635. Siwanowicz denies these allegations.

Houghtaling was scheduled to leave the CPH Unit on August 12, 2021. The night before, Houghtaling interrupted a conversation between Weaver, a prisoner who was housed across from Houghtaling in the CPH Unit for disciplinary sanctions, and another inmate. Weaver testified that Houghtaling's interjection made him feel "very, very disrespected." RE 50-6, Weaver Dep., PageID 471-72. Both Weaver and Houghtaling testified that neither had a problem with the other before that night.

### III. August 12, 2021 stabbing

On the morning of August 12, 2021, Siwanowicz went to Houghtaling's cell to prepare him for his transfer. After one of Siwanowicz's colleagues opened Houghtaling's cell door remotely, Siwanowicz realized Houghtaling did not have the proper attire for his transfer, so she started to walk away from Houghtaling's cell. As she did, Houghtaling asked her to close his door, explaining that he was "on protective custody," RE 52-3, Houghtaling Dep., PageID 602, and that "there were other inmates in the hallway," RE 50-7, Houghtaling Dep., PageID 484. Adkins heard Siwanowicz reply that she would not "keep opening and closing his fucking cell door," RE 52-8, Adkins Aff., PageID 633, which Siwanowicz denies. During her deposition, Siwanowicz suggested that she did not close Houghtaling's cell door because her "key would not work to open it or close it." RE 50-8, Siwanowicz Dep., PageID 506. However, Siwanowicz also admitted that she was not sure if the key was malfunctioning on that day, and even "with the key not working," the door could be closed from a switchboard. *Id.* at 530-31. Regardless, Siwanowicz conceded that Houghtaling's stabbing could have been prevented had she not failed to "make sure his door was closed before [she] walked away." *Id.* at 513.

Siwanowicz then walked down the hallway to open the cell door for an inmate who had returned from a shower, and then she "went down the stairs" to a different floor. RE 52-4, Siwanowicz Dep., PageID 613. At the same time, Weaver's door was open for him as he returned from the shower. Moments after Siwanowicz left the hallway, Weaver raced to Houghtaling's cell and stabbed him over twenty times. Weaver denied stabbing Houghtaling, but video of the incident shows Weaver stabbing Houghtaling with an object. Medical reports after the attack describe Houghtaling's injuries including multiple lacerations and puncture wounds, some between 0.5 centimeters and 6 inches deep.

After the stabbing, prison staff interviewed Weaver, who said that he was paid in suboxone "for performing the hit on Houghtaling." RE 1-13, Grievance Resp., PageID 49. Weaver denies that he said this and testified that Houghtaling's disrespect from the previous night prompted Weaver to attack him. Siwanowicz admitted that inmates in protective custody "should not be in with the general population" and that in order to "protect" an inmate in protective custody, she "just ke[pt] the other inmates away from [inmates in protective custody] because [she] never kn[e]w who they might [have] be[en] running from." RE 52-4, Siwanowicz Dep., PageID 610. She further admitted she "should have closed [Houghtaling's] door" and walking away from Houghtaling's cell without "mak[ing] sure his door was closed" was a "failure[] in procedure." RE 50-8, Siwanowicz Dep., PageID 513.

## IV. Houghtaling's complaint

After going through the prison's grievance process, Houghtaling filed a federal complaint against Siwanowicz, arguing her conduct was deliberately indifferent in violation of the Eighth Amendment. Houghtaling later amended his complaint to add a gross negligence claim under Michigan state law. Siwanowicz moved for summary judgment on Houghtaling's deliberate

indifference claim and invoked qualified immunity. A magistrate judge issued a report and recommendation, recommending that the district court grant summary judgment for Siwanowicz because Houghtaling did not establish she "failed to reasonably respond to any risk to [Houghtaling] of which she was subjectively aware." RE 59, R. & R., PageID 732. The district court adopted the report and recommendation, dismissing Houghtaling's Eighth Amendment claim and declining to exercise supplemental jurisdiction over his state law claim. Houghtaling timely appealed.

## ANALYSIS

### I. Standard

We review a district court's grant of summary judgment de novo. *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 805 (6th Cir. 2020). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party makes that showing, the nonmoving party must then "present sufficient evidence to permit a reasonable jury to find in its favor." *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 536 (6th Cir. 2014). The non-moving party cannot "rest upon [his] mere allegations," but must present "significant probative evidence" showing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citation modified). When evaluating a summary judgment motion, "[w]e must view all of the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in the nonmoving party's favor." *Willard*, 952 F.3d at 805-06. But "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

II.     **Discussion**

On appeal, Houghtaling argues that the district court erred by finding there was no genuine issue of material fact that Siwanowicz knew he was at substantial risk of harm.  He also argues that the court improperly granted Siwanowicz qualified immunity (an issue the court did not reach).  We agree that the district court erroneously found that there was no dispute of material fact as to Siwanowicz's subjective awareness and conscious disregard of substantial risk.  But because the district court did not determine whether Siwanowicz was entitled to qualified immunity in the first instance, we remand for further proceedings.  And because we reinstate Houghtaling's federal claim, we also direct the district court to exercise supplemental jurisdiction over his state claim.

A.     **Constitutional violation**

To state a claim for a prison official's failure to protect under the Eighth Amendment, an inmate must make both objective and subjective showings.  The objective prong requires an inmate to show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Under the subjective prong, an inmate must show that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," drew that inference, and "consciously disregard[ed]" that risk. *Id.* at 837-38 (citation modified).  An officer's awareness "can be demonstrated through inference from circumstantial evidence." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citation modified).

On appeal, the parties contest only whether Houghtaling established a dispute of material fact that Siwanowicz was subjectively aware of a substantial risk of serious harm and consciously

disregarded that risk. Houghtaling has introduced sufficient evidence to demonstrate a genuine issue as to these points.

### 1.     Siwanowicz's subjective awareness

Houghtaling introduces evidence of three facts from which a juror could infer that Siwanowicz subjectively understood that he was at a substantial risk of harm: (1) Siwanowicz was aware that inmates in protective custody generally faced a risk of harm from other inmates, and Houghtaling was placed in protective custody after threats from other inmates had been made against him; (2) Houghtaling asked Siwanowicz to close the door to his cell, communicating to her that doing so was necessary for his safety; and (3) Siwanowicz understood that if Houghtaling were removed from protective custody, he would be "fucked up." RE 52-8, Adkins Aff., PageID 632.

First, Siwanowicz characterizes Houghtaling's stabbing as the result of a "general threat of violence . . . always present in prison," but facts in the record suggest that Siwanowicz was aware that Houghtaling faced an elevated risk of harm. CA6 R. 14, Appellee Br., at 16-17. After all, Siwanowicz knew that threats had been made against Houghtaling when he arrived in protective custody. And she admitted that inmates under protective custody "should not be in with [inmates from] the general population," like Weaver. RE 52-4, Siwanowicz Dep., PageID 610. To that end, she kept those groups separate because she "never knew who they might be running from." *Id.* True, Siwanowicz was not aware of any specific threats made by Weaver to Houghtaling. But Siwanowicz cannot "escape liability for deliberate indifference by showing that, while [s]he was aware of an obvious, substantial risk to inmate safety, [s]he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843.

Second, Siwanowicz left Houghtaling's door open after Houghtaling specifically asked her to close it because he was "on protective custody," RE 52-3, Houghtaling Dep., PageID 602, and "there were other inmates in the hallway," RE 50-7, Houghtaling Dep., PageID 484. The magistrate judge reasoned that this was merely a "general request," and Houghtaling "did not express any particular concern for his safety or identify any particular prisoner who might constitute a threat." RE 59, R. & R., PageID 734. And the district court, in denying Houghtaling's objections to the report and recommendation, found that the record evidence "does not permit the inference that Defendant had knowledge of any particular threat to Plaintiff." RE 63, Order Adopting R. & R., PageID 768-69. But a reasonable juror could infer that Siwanowicz understood that Houghtaling requested that she close his door because (1) failing to do so could expose him to other inmates who had threatened him, and (2) he reminded her of these threats by pointing out the other inmates in the hallway. *See Greene*, 361 F.3d at 294 (noting "[t]hat awareness can be demonstrated through inference from circumstantial evidence" (citation modified)). And again, Houghtaling was not required to identify a particular individual who threatened him. *Farmer*, 511 U.S. at 843.

Finally, taking Adkins's statement as true that Siwanowicz "wished [Houghtaling] . . . wasn't on Protective Custody status so he would get 'fucked up,'" Siwanowicz understood that failing to observe the strictures of protective custody for Houghtaling could expose him to a substantial risk of violence. RE 52-8, Adkins Aff., PageID 632. Although Siwanowicz denies this account and claims Adkins was "lying," RE 50-8, Siwanowicz Dep., PageID 522-23, "[c]redibility determinations . . . are jury functions, not those of a judge," *Anderson*, 477 U.S. at 255. Likewise, the "weighing of the evidence and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge." *Id.* By failing to credit the legitimate inferences that a reasonable juror could draw from these statements, the district court erred.

Siwanowicz argues that Weaver's attack was a "random assault that occurs in prison," unrelated to the threats that prompted Houghtaling to be placed in protective custody. CA6 R. 16, Appellee Br., at 3, 16-17. That is, Siwanowicz does not dispute that Houghtaling faced a risk of violence; she simply argues that she cannot be liable because she did not know that Weaver specifically would attack him. But even if Weaver's attack was unconnected to the threats Houghtaling received, which Houghtaling disputes, Houghtaling does not need to show that Siwanowicz knew he "was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843. It is enough that Siwanowicz knew that failure to secure Houghtaling in protective custody exposed him to a substantial risk of harm.

These facts resemble those of *McGowan v. Herbert*, No. 22-2033, 2023 WL 2945341 (6th Cir. Apr. 14, 2023). There, an inmate, McGowan, was "labeled a snitch by other detainees in his housing unit," and he requested placement in protective custody. *Id.* at *1 (citation modified). After remaining in protective custody for a few months, McGowan wrote to the officer responsible for housing placements and "begged and pleaded not to be removed from protective custody because he was afraid that other inmates would harm or kill him." *Id.* (citation modified). Despite McGowan's request, the officer removed him from protective custody, where he was attacked by another inmate less than a month later. *Id.* Applying the Fourteenth Amendment deliberate-indifference standard for pre-trial detainees, we reasoned that a factfinder could conclude that "a *reasonable* officer in the circumstances would have appreciated the high degree of risk involved and the obvious consequences of removing McGowan from protective custody." *Id.* at *3 (citation modified). Similarly, a factfinder could reasonably infer from the facts here that Siwanowicz

appreciated the substantial risk of harm to Houghtaling. To recap, Siwanowicz knew that Houghtaling had received threats from other prisoners when he arrived in protective custody; Houghtaling reminded her that he was in protective custody and other inmates were walking in the halls when she refused to close the door; and she understood that if Houghtaling were removed from protective custody he would get "fucked up." RE 52-8, Adkins Aff., PageID 632. Taking these facts together, "a reasonable trier of fact" could infer that Siwanowicz was subjectively aware that Houghtaling's safety was at substantial risk. *Greene*, 361 F.3d at 293.

Siwanowicz cites a number of cases in response, but they miss the mark. First, she points to *Lynn v. Melton*, No. 16-6109, 2017 WL 11408171 (6th Cir. Mar. 30, 2017) (order), where a prisoner complained that multiple correctional employees failed to prevent another prisoner from assaulting him. We found that the prisoner's bare allegations that an officer "was aware that another inmate had threatened [him]," without more, could not meet the subjective prong. *Id.* at *2. Here, though, there is more: Siwanowicz testified that she was aware that Houghtaling had been threatened while he was housed in protective custody, and Houghtaling reminded her that he was in protective custody when he asked her to close his door to keep him separated from the general population inmates.

Siwanowicz then cites to *Anderson v. Hairabedian*, No. 20-4177, 2022 WL 1411784 (6th Cir. Feb. 10, 2022) (order). In that case, Anderson was charged with fighting with three other prisoners and the warden ordered that Anderson be separated from the other inmates. *Id.* at *1. Anderson alleged that "the separation order was illegally broken" on three separate occasions. *Id.* (citation modified). During the first incident, Anderson claimed that two officers transferred him to a dorm where one of the other inmates subject to the separation order, Smith, was housed and a third officer "kept electronically unlocking Anderson's cell door." *Id.* (citation modified). But

Anderson did not allege that the first two officers involved knew that there was a standing separation order. Instead, he claimed that "a document posted in the [department] office list[ing] inmates with separation orders" put the officers on notice of the order. *Id.* at *3. And he did not allege any facts showing the third officer was aware of the separation order at all. *Id.* As to the other two incidents, Anderson alleged that officers attempted to or did place him in the same housing unit as Smith, but Anderson was removed after he informed the officers of the separation order. *Id.* at *2. Here, not only was Siwanowicz aware of Houghtaling's protective-custody status, but Houghtaling also introduced evidence suggesting that Siwanowicz declined to lock his door after he reiterated his protective custody status.

Finally, Siwanowicz cites to *Thornhill v. Rees*, 865 F.2d 261 (6th Cir. 1988) (table). There, Thornhill alleged that he was violently assaulted while in administrative protective custody and claimed the defendants failed to protect him from serious injury in violation of the Eighth Amendment. *Id.* at *1. We reasoned that Thornhill's claims only amounted to negligence, and "allegations of negligence are insufficient to establish an [E]ighth [A]mendment claim that prison officials failed to protect him from injury by other inmates." *Id.* But Houghtaling's allegations rise beyond negligence. *Thornhill* contained no facts regarding defendants' awareness of the risk of violence to Thornhill or what that risk was. Houghtaling, on the other hand, has provided evidence that could lead a reasonable trier of fact to conclude that Siwanowicz knew he was at risk of substantial harm. Thus, the district court erred by resolving disputed facts in Siwanowicz's favor.

### 2. Siwanowicz's conscious disregard

Siwanowicz also disputes that Houghtaling created a dispute of material fact that she consciously disregarded a substantial risk of harm to Houghtaling. We disagree.

Siwanowicz seemingly argues that she did not disregard a substantial risk of harm because she was not aware of a substantial risk of harm, beyond the general risk of exposure to violence in prison. For instance, she argues that "Houghtaling's request" that she close his door did "not suggest any imminent attack or other substantial risk of harm" because it "was merely a request to have his door closed." CA6 R. 14, Appellee Br., at 32. But as explained above, a reasonable juror could believe Houghtaling meant to communicate that as a prisoner in protective custody, the presence of general population inmates in the hallway threatened his safety, and Siwanowicz drew this inference. Like the inmate in *McGowan*, by refusing to actually protect Houghtaling while in protective custody, she consciously disregarded the risk of harm to him. *McGowan*, 2023 WL 2945341, at *3.

Siwanowicz also tries to dispute her awareness of other inmates walking in the hallway before the attack. She argues that "when she walked away from Houghtaling's cell and out of the unit, it would have appeared to her that no prisoners were roaming the hallway." CA6 R. 14, Appellee Br., at 33. True, when Siwanowicz walked away from Houghtaling's cell, she turned her back on Weaver's open door. But Siwanowicz testified in her deposition that she "knew that Weaver was walking freely about the hallway before" Houghtaling was attacked. RE 50-8, Siwanowicz Dep., PageID 507. She further argues that even with this knowledge, the "general population or sanction inmates' . . . mere presence in or access to the hallway would not have suggested a substantial risk of harm to Houghtaling or any other prisoner." CA6 R. 14, Appellee Br., at 33. But as Houghtaling warned her, his concern was not their "mere presence," it was that he would be exposed to general population prisoners who might harm him if the door were not locked. And as Siwanowicz admitted in her deposition, not only would she protect the inmates in protective custody by "just keep[ing] the other inmates away from [inmates in protective custody]

because [she] never kn[ew] who they might be running from," she also knew Houghtaling specifically had received threats from other inmates. RE 52-4, Siwanowicz Dep., PageID 610. In sum, Houghtaling introduced evidence showing that he reminded her of this risk and that she chose to ignore that risk, notwithstanding the potential consequences.

### B.       Qualified immunity

Although he raised the issue in his brief, Houghtaling concedes in his reply that the district court did not address whether Siwanowicz was shielded by qualified immunity and that the district court should address the issue in the first instance. "[W]e are a court of review, not first view." *United States v. Houston*, 792 F.3d 663, 669 (6th Cir. 2015). Therefore, we remand to the district court to determine whether Siwanowicz is entitled to qualified immunity. *See Zakora v. Chrisman*, 44 F.4th 452, 465 (6th Cir. 2022) (declining to determine if officers were entitled to "qualified immunity for the first time on appeal"); *Haywood v. Hough*, 811 F. App'x 952, 961-63 (6th Cir. 2020) (same).

### C.       State law claim

The district court declined to exercise supplemental jurisdiction over Houghtaling's state law claim because it dismissed his federal claim. Because we reverse the district court's grant of summary judgment on Houghtaling's federal claim, and the state law claim "form[s] part of the same case or controversy," the district court retains supplemental jurisdiction. 28 U.S.C. § 1367(a).[1]

---

[1] Our reinstatement of Houghtaling's state law claim does not foreclose the district court's ability to revisit this issue should later proceedings affect the procedural posture and pertinent supplemental jurisdiction considerations.

**CONCLUSION**

Houghtaling has introduced evidence sufficient to create a dispute of material fact that Siwanowicz was aware of a substantial risk of harm and chose to disregard that risk. Therefore, we reverse, direct the court to exercise supplemental jurisdiction over Houghtaling's state law claim, and remand for further proceedings.